**TIFFANY LENA, ESQ.; SBN 185603**
1670 Sagewood Way
San Marcos, CA 92078
telephone: (760) 612-9976
tiffany.lena@att.net

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BOARD OF TRUSTEES OF THE KERN COUNTY ELECTRICAL WORKERS' PENSION FUND, BOARD OF TRUSTEES OF THE KERN COUNTY ELECTRICAL WORKERS' HEALTH & WELFARE TRUST AND BOARD OF TRUSTEES OF THE KERN COUNTY ELECTRICAL JOURNEYMAN & APPRENTICESHIP TRAINING TRUST,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**FLATIRON ELECTRIC GROUP, Inc., and DOES 1 THROUGH 10**<br><br>**Defendants.** | Civil Case No.:<br><br>**COMPLAINT TO COLLECT DELINQUENT CONTRIBUTIONS, LIQUIDATED DAMAGES, INTEREST, ATTORNEY'S FEES, AND COSTS [ERISA §§ 515, 502(g)(2)][29 U.S.C. §§ 1145, 1132(g)(2)]** |

Plaintiffs complain and allege as follows:

1) This Court has jurisdiction of this case under section 502(e)(1) of the Employee Retirement Income Security Act of 1974 (herein referred to as "ERISA"), as amended, (29 U.S.C. §1132 (e)), and under section 301(a) of the Labor Management Relations Act of 1947 (herein referred to as the "LMRA"), as amended (29 U.S.C. §185(a)).

2) Plaintiffs are the Board of Trustees of the Kern County Electrical Workers' Pension Fund, the Board of Trustees of the Kern County Electrical Workers' Health & Welfare Trust,

and the Board of Trustees of the Kern County Electrical Journeyman and Apprenticeship Training Trust (collectively referred to herein as "the TRUSTS"), which TRUSTS are duly organized and operating in this state.

3) The TRUSTS are administered by Construction Benefits Administration, Inc. (hereinafter "the ADMINISTRATOR"), a non-profit corporation organized and doing business under the laws of California, which has its office in the City of Bakersfield, County of Kern. Venue is therefore proper in this district under ERISA section 502(e)(2) (29 U.S.C. §1132(e)(2)).

4) The TRUSTS were created and now exist pursuant to LMRA section 302(c) (29 U.S.C. §186(c)) and are each part of a multi-employer plan as defined in ERISA section 3(37)(A) (29 U.S.C. §1002(37)(A) and as used in ERISA sections 515 and 502(g)(2) (29 U.S.C. §§1145, 1132(g)(2)).

5) PLAINTIFFS are informed and believe, and allege thereon, that Defendant Flatiron Electric Group, Inc. (hereinafter referred to as "DEFENDANT") is, and at all times relevant was, a corporation organized and existing under the laws of California, with it's primary business office in Chino Hills, County of San Bernadino, California.

6) The true names and capacities of DEFENDANTS DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to PLAINTIFFS, who therefore sue said DEFENDANTS by such fictitious names. PLAINTIFFS will amend their Complaint to allege said DOE DEFENDANTS' true names and capacities when the same have been ascertained. PLAINTIFFS are informed and believe and thereon allege that each DEFENDANT designated herein is responsible in some actionable manner for the occurrences and injuries alleged herein.

7) On or about April 26, 2013, DEFENDANT signed a Letter of Assent with the International Brotherhood of Electrical Workers, Local 428 (hereinafter "LOCAL 428") by which DEFENDANT authorized the National Electrical Contractor's Association, Kern County Chapter (hereinafter "NECA Kern County") to act as DEFENDANT's collective bargaining representative for all matters pertaining to the current Collective Bargaining Agreement between LOCAL 428 and NECA Kern County entitled "2012-2014 Agreement Covering Inside Electrical Construction & Maintenance Work in Kern County California" (hereinafter "the 2012 CBA," a true and accurate copy of relevant portions of which is attached hereto as Exhibit "A" and incorporated herein by reference). The 2012 CBA states on page 1 that, "[this Agreement] shall apply to <u>all firms</u> who sign a <u>Letter of Assent</u> to be bound by the terms of this Agreement." Thus, DEFENDANT is a signatory contractor to the 2012 CBA. A true and accurate copy of the Letter of Assent is attached hereto as Exhibit "B" and incorporated herein by reference.

8) Section 6.02(a) of the 2012 CBA states that, "All parties signatory to this Agreement agree to abide by all the rules and regulations of the Trust Agreements (those documents establishing the TRUSTS and the rules by which they are administered, hereinafter "TRUST AGREEEMENTS") of the (1) Kern County Electrical Health Fund. . .; (2) Kern County Electrical Pension Fund . . .; and (3) Kern County Electrical Apprenticeship and Training Fund. . .." Section 602(b) of the 2012 CBA states that, "The employer shall pay monthly, the amounts stated above in subsections (a)(1), (a)(2), and (a)(3), to a depository designated by the Trustees of these Funds, for each hour worked by all employees employed on work covered by this Agreement." See Exhibit "A," referenced above.

9) PLAINTIFFS are informed and believe and thereon allege that DEFENDANT did perform electrical work pursuant to the Letter of Assent and within the jurisdiction of LOCAL 428 during the following dates: May 2013 through August 2014 and April 2015 through November 2016. As such, DEFENDANT was obligated to make fringe benefit contributions according to the 2012 CBA and the TRUST AGREEMENTS.

10) Article IV CONTRIBUTIONS & COLLECTIONS, Section 4.4 Production of Records, of the Pension Trust Agreement states that, "Each Employer shall promptly furnish to the Trustees on demand the names of his Employees, their Social Security numbers, the hours worked by each Employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose. The Trustees may, by their representatives, examine the pertinent employment and payroll records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund. The Union shall, upon the request of the Trustees, promptly furnish information with respect to an Employee's employment status.

If an audit of the Employer's payroll records finds additional amounts of contributions due and delinquent to the Trust Fund, then the Employer may be liable for the reasonable costs incurred by the Trustees in performing the Audit.

A true and accurate copy of relevant portions of the Pension Trust Agreement is attached hereto as Exhibit "C" and incorporated herein by reference.

//

//

11) Article IV <u>CONTRIBUTIONS AND COLLECTIONS</u> of the Journeyman & Apprenticeship Training Trust Agreement states that, "(a) Each Employer shall make prompt contributions or payments to the Trust Fund in such amount and under the terms provided for in the applicable collective bargaining agreement ..." A true and accurate copy of relevant portions of the Journeyman & Apprenticeship Training Trust Agreement is attached hereto as Exhibit "D" and incorporated herein by reference.

12) Article IV <u>CONTRIBUTIONS AND COLLECTIONS</u> of the Health & Welfare Trust Agreement states that, "(a) Each Employer shall make prompt contributions or payments to the Trust Fund in such amount and under the terms provided for in the applicable collective bargaining agreement . . ." A true and accurate copy of relevant portions of the Health & Welfare Trust Agreement is attached hereto as Exhibit "E" and incorporated herein by reference.

13) PLAINTIFFS are informed and believe and thereon allege that on or about May 3, 2017, an audit of DEFENDANT's payroll records was conducted pursuant to the Trust Agreements referenced above. It is the TRUST's policy to conduct an audit upon the termination of a project to ensure that all contributions and wages have been properly paid. The results of the audit disclosed that DEFENDANT had underpaid contributions in the amount of $1,019.14 plus liquidated damages, interest and auditors fees of $2,575.00. By letter of August 9, 2017, the TRUSTS Administrative Office notified DEFENDANT of the amount owed, and also provided a statement of services from the TRUST's auditor and accounting schedules of the amounts due by DEFENDANT to the TRUSTS. A true and accurate copy of this correspondence is attached hereto as Exhibit "F" and incorporated herein by reference. DEFENDANTS did not make any payments or respond to this correspondence.

14) Legal Counsel for the TRUSTS sent another letter requesting payment on November 2, 2017. A true and accurate copy of this correspondence is attached hereto as Exhibit "G" and incorporated herein by reference. No payments were received in response to this letter.

15) Sometime in late December 2017, Legal Counsel for the TRUSTS received a telephone message from DEFENDANT's payroll department. Legal Counsel returned the telephone call in January of 2018 whereupon she was requested to resend the audit information and request for payment (Exhibit "F," supra) to the payroll department. This information was sent by email to DEFENDANT on January 5, 2018. A true and accurate copy of the letter accompanying the audit information is attached hereto as Exhibit "H" and incorporated herein by reference. Again, no payments were made by DEFENDANT.

16) In a final attempt to collect the debt, Legal Counsel left a telephone message with the payroll department on January 26th, 2018 and sent two more emails on January 22, and February 1, 2018. No payments were forthcoming. True and accurate copies of all emails sent to DEFENDANTS are attached hereto as Exhibit "I" and incorporated herein by reference.

17) At no time has DEFENDANT stated that they do not owe the delinquent fringe benefit contributions disclosed by the audit, or otherwise disputed the amount owed.

18) The TRUST AGREEMENTS do not require Plaintiffs to exhaust administrative remedies before initiating this action. Said costs and expenses and attorney's fees will be set forth at the time of trial.

19) Prompt payment of fringe benefit contributions to the TRUSTS is essential to the continued financial health and maintenance of the TRUSTS which are bound by law to provide pension benefits to participants and beneficiaries even when employers do not make

their contractual payments. Further, when health and welfare contributions are not paid, Participants and Dependents of the Plan lose needed medical benefits.

20) At the time of this filing, DEFENDANT owes an estimated $6,192.00 to PLAINTIFFS representing unpaid fringe benefit contributions as well as interest, liquidated damages and attorneys fees plus any additional costs and attorneys fees incurred by this lawsuit.

21) The TRUST AGREEMENTS are binding upon the heirs, executors, administrators, successors, purchasers and assignees of DEFENDANT, including any name or style under which business is conducted with respect to work covered by the TRUST AGREEMENTS.

WHEREFORE, Plaintiffs pray a judgment against DEFENDANT as follows:

a. For principal amount to be shown through proof at time of trial, consisting of contributions and liquidated damages;

b. For interest at the rate of 10% per annum on all sums due;

c. For costs of the lawsuit incurred herein;

d. For reasonable attorney's fees incurred herein;

e. For such other and further relief as the court may deem appropriate.

DATED: March 23, 2018

Plaintiffs BOARDS OF TRUSTEES OF THE KERN COUNTY ELECTRICAL WORKERS' PENSION FUND, THE KERN COUNTY ELECTRICAL WORKERS' HEALTH & WELFARE TRUST, AND THE KERN COUNTY ELECTRICAL JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST

TIFFANY LENA
The Law Office of Tiffany Lena
Attorney for Plaintiffs